UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

____

JAMES BLAYLOCK,

    Plaintiff,                                  Case No. 1:25-cv-757

v.                                                          Honorable Maarten Vermaat

MICHAEL BURGESS et al.,

    Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. (ECF No. 2.) Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 1, PageID.6.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a

named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that Defendants are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way Defendants are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Burgess, Clouse, Ward, and Lofton.

The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Baker and Boerema: (1) any intended First Amendment retaliation claims premised upon Plaintiff's initial receipt of misconduct tickets after violating Michigan Department of Corrections (MDOC) policy and procedure; (2) Plaintiff's Eighth Amendment claims; and (3) Plaintiff's Fourteenth Amendment claims.

Plaintiff's First Amendment retaliation claims premised upon Defendant Baker and Boerema's issuance of sanctions right after Plaintiff threatened civil action remain in the case.

## **Discussion**

### I.    **Factual Allegations**

Plaintiff is currently incarcerated by the MDOC at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. The events about which he complains,

---

United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

however, occurred while Plaintiff was incarcerated at the Oaks Correctional Facility (ECF) in Manistee, Manistee County, Michigan.

Plaintiff sues the following ECF personnel in their official and personal capacities: Warden **Michael Burgess**, Deputy Warden **Unknown Clouse**, Captain **Unknown Boerema**, Lieutenant **Unknown Baker**, and Sergeants **Unknown Ward** and **Unknown Lofton**.

Plaintiff's complaint concerns alleged violations of his constitutional rights during misconduct proceedings. Plaintiff has not provided any facts regarding the misconduct proceedings in the body of his complaint, but he has attached copies of the documents related to the misconduct proceedings to his complaint.

On November 7, 2023, Defendant Baker issued Plaintiff a Class II misconduct report for destruction or misuse of property and violation of posted rules. (ECF No. 1-1, PageID.11.) Defendant Baker noted that Plaintiff had used paper to completely cover his cell window. (*Id.*) Defendant Baker noted further that "Prisoner Brooks is misusing the paper by using it to cover his cell window so that staff cannot effectively conduct their job." (*Id.*) The ticket indicated that Defendant Lofton reviewed the misconduct with Plaintiff that same day, and that Plaintiff refused to sign to indicate that he received a copy. (*Id.*) However, at a hearing held on November 17, 2023, non-party Hearing Officer Johnson found Plaintiff not guilty based upon the fact that the misconduct "has two different prisoner names for violation." (*Id.*, PageID.12.)

Also on November 7, 2023, Defendant Lofton issued Plaintiff a Class II misconduct for disobeying a direct order. (*Id.*, PageID.16.) Defendant Lofton noted that Plaintiff had covered his window with a sheet. (*Id.*) Defendant Lofton gave Plaintiff "several orders to remove the cover from his window," but Plaintiff refused to comply, instead stating, "stay away from my door." (*Id.*) Defendant Lofton noted that Plaintiff refused to sign for his copy of the misconduct. (*Id.*)

Defendant Baker found Plaintiff guilty and sanctioned Plaintiff to 15 days' loss of privileges. (*Id.*) Although Plaintiff claimed he had not received a copy of the misconduct, it was noted that a copy of the misconduct had been hung on Plaintiff's door card, and that if Plaintiff wanted access to it, it was Plaintiff's responsibility "to review and return the copy under staff supervision." (*Id.*) Moreover, Plaintiff "would not be able to keep the copy until the paper restriction was lifted." (*Id.*) Plaintiff's appeal of the misconduct conviction was denied by Defendant Clouse. (*Id.*, PageID.18.)

Plaintiff received a third misconduct on November 7, 2023. (*Id.*, PageID.19.) Non-party Correctional Officer Rasumussen issued Plaintiff a Class II misconduct for insolence for saying "cute baby, that's cute" to her through the cell door. (*Id.*) Defendant Lofton reviewed the misconduct with Plaintiff, and Plaintiff refused to sign to indicate that he had received his copy. (*Id.*) Defendant Baker found Plaintiff guilty and sanctioned him to 15 days' loss of privileges. (*Id.*, PageID.20.) Plaintiff claimed he did not receive a copy of the misconduct. (*Id.*) Again, Defendant Baker noted that a copy of the misconduct had been hung on Plaintiff's door card, and that if Plaintiff wanted access to it, it was Plaintiff's responsibility "to review and return the copy under staff supervision." (*Id.*) Moreover, Plaintiff "would not be able to keep the copy until the paper restriction was lifted." (*Id.*) Plaintiff's appeal of the misconduct conviction was denied by Defendant Clouse. (*Id.*, PageID.21.)

On November 8, 2023, non-party Correctional Officer Snay issued Plaintiff a Class II misconduct for destruction/misuse of property based upon the fact that Plaintiff had covered his cell window with clothing and refused to remove the clothing from the window. (*Id.*, PageID.13.) Plaintiff appeared before Defendant Boerema for a misconduct hearing on November 12, 2023, and claimed that he had not received a copy of the misconduct because of his placement on paper restriction. (*Id.*, PageID.14.) Defendant Boerema found Plaintiff guilty and sanctioned him with

15 days' loss of privileges. (*Id.*) Defendant Boerema noted that a copy of the misconduct had been hung on Plaintiff's door card, and that if Plaintiff wanted access to it, it was Plaintiff's responsibility "to review and return the copy under staff supervision." (*Id.*) Defendant Boerema stated that Plaintiff's due process rights were not violated because Plaintiff "would not be able to keep the copy until the paper restriction was lifted." (*Id.*) Plaintiff's appeal of the misconduct conviction was denied by Defendant Clouse. (*Id.*, PageID.15.)

Officer Rasmussen issued Plaintiff another Class II misconduct for insolence on November 8, 2023, based upon Plaintiff stating that he was just trying to "admire [her] beauty." (*Id.*, PageID.25.) Defendant Ward reviewed the misconduct with Plaintiff, and Plaintiff refused to sign to indicate his receipt of his copy. (*Id.*) On November 15, 2023, Defendant Boerema found Plaintiff guilty and sanctioned him to 20 days' loss of privileges. (*Id.*, PageID.26.) Defendant Boerema rejected Plaintiff's argument that Defendant Ward never reviewed the misconduct with him or provided him with a copy. (*Id.*) Defendant Boerema stated that video footage clearly showed Defendant Ward "reviewing misconducts at [Plaintiff's] cell during the times noted on the misconducts as being reviewed." (*Id.*) Video also showed Defendant Ward "sliding copies of the reviewed misconducts into [Plaintiff's] cell." (*Id.*) Plaintiff's appeal of the misconduct conviction was denied by Defendant Clouse. (*Id.*, PageID.27.)

On November 9, 2023, non-party Correctional Officer Frank issued Plaintiff a Class II misconduct for disobeying a direct order. (*Id.*, PageID.22.) When Officer Frank asked Plaintiff to remove the blanket from his cell window, Plaintiff said, "F*** you!" and refused to do so. (*Id.*) Defendant Ward reviewed the misconduct with Plaintiff, and Plaintiff refused to sign to indicate receipt of his copy. (*Id.*) On November 15, 2023, Defendant Boerema, the hearing officer, found Plaintiff guilty and sanctioned him to 20 days' loss of privileges. (*Id.*, PageID.23.) Defendant

Boerema rejected Plaintiff's argument that Defendant Ward never reviewed the misconduct with him or provided him with a copy. (*Id.*) Defendant Boerema stated that video footage clearly showed Defendant Ward "reviewing misconducts at [Plaintiff's] cell during the times noted on the misconducts as being reviewed." (*Id.*) Video also showed Defendant Ward "sliding copies of the reviewed misconducts into [Plaintiff's] cell." (*Id.*) Plaintiff's appeal of the misconduct conviction was denied by Defendant Clouse. (*Id.*, PageID.24.)

On November 14, 2023, Officer Frank issued Plaintiff a Class II misconduct ticket for destruction/misuse of property. (*Id.*, PageID.9.) The report indicated while Plaintiff's last cell was being cleaned, staff found the mattress "ripped open on one side with the inner cushion removed." (*Id.*) Plaintiff appeared before non-party Hearing Officer Maddox on November 20, 2023, and pleaded not guilty to the misconduct. (*Id.*, PageID.10.) Plaintiff argued that he had never received a copy of the misconduct. (*Id.*) According to Plaintiff, "Sergeant Johnson came to his door then started the review then said he would be right back. He never came back to finish reviewing the misconduct." (*Id.*) Hearing Officer Maddox noted that Plaintiff refused to sign the misconduct, and that the box to enter the time of review was blank. (*Id.*) Moreover, a copy of the misconduct was found attached to the outside of Plaintiff's cell door. (*Id.*) In light of those facts, Hearing Officer Maddox found Plaintiff not guilty after concluding that there was enough evidence to suggest that Plaintiff never received his copy of the misconduct. (*Id.*) Hearing Officer Maddox noted that Plaintiff was on paper restriction at the time of the alleged review, but if that was the case, the "reviewing officer should have noted on the misconduct that a copy was not provided directly to the prisoner due to being currently on a paper restriction." (*Id.*)

In the body of his complaint, Plaintiff suggests that on the days he appeared before Defendant Baker for misconduct hearings, he told Defendant Baker that "[his] due process was

7

violated [and] civil action [would] be taken." (Compl., ECF No. 1, PageID.4.) Defendant Baker told Plaintiff to "sign off" and he would give Plaintiff "[seven] days on each." (*Id.*) Plaintiff suggests that because he did not sign off on the tickets, Defendant Baker retaliated against Plaintiff by giving him 15 days' loss of privileges for each ticket. (*Id.*)

Similarly, Plaintiff goes on to allege that on the days he appeared before Defendant Boerema for misconduct hearings, Plaintiff told Boerema that his due process rights had been violated and that "civil action [would] be taken." (*Id.*) According to Plaintiff, Defendant Boerema called Plaintiff a nuisance and said that he would not be dismissing the tickets. (*Id.*) Plaintiff suggests that Defendant Boerema falsified the hearing report by stating that the camera footage showed the sergeant sliding the tickets under Plaintiff's cell door even after Plaintiff told Defendant Boerema that the tickets had been hung on the wall next to Plaintiff's cell door. (*Id.*) Plaintiff also suggests that Defendant Boerema retaliated against Plaintiff by finding him guilty and giving him a total of 40 days' loss of privileges. (*Id.*) Finally, Plaintiff suggests that Defendants Clouse and Burgess retaliated by denying Plaintiff's appeals of these misconduct convictions. (*Id.*, PageID.5.)

Based upon the foregoing, Plaintiff asserts violations of his First, Eighth, and Fourteenth Amendment rights. (Compl., ECF No. 1, PageID.4–5.) Plaintiff seeks injunctive relief in the form of "overturn[ing] [the] tickets," as well as compensatory and punitive damages. (*Id.*, PageID.6.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). As set forth above, Plaintiff asserts violations of his First, Eighth, and Fourteenth Amendment rights.

### A.     First Amendment

Plaintiff contends that all Defendants violated his First Amendment right to be free from retaliation throughout the various misconduct proceedings described *supra.* (Compl., ECF No. 1, PageID.4–5.)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). To set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged

9

in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

First, to the extent that Plaintiff suggests that various Defendants issued him misconduct tickets in response to his protected conduct, Plaintiff's complaint does not set forth any facts from which the Court could infer that Plaintiff was engaged in protected conduct when he initially received the various misconduct tickets. Instead, Plaintiff's complaint and exhibits suggest that he received the various misconduct tickets because he violated MDOC prison regulations, not because he was engaged in protected conduct. As the Sixth Circuit explained in *Thaddeus–X*, "if a prisoner violates a legitimate prison regulation, he is not engaged in 'protected conduct,' and cannot proceed beyond step one" of the three-step retaliation analysis. *Thaddeus-X*, 175 F.3d at 394; *see Lockett v. Suardini*, 526 F.3d 866, 874 (6th Cir. 2008) (holding that insolence is not protected conduct for First Amendment purposes). Thus, any purported First Amendment retaliation claims premised Plaintiff's receipt of misconduct tickets because he violated MDOC policy and procedure fail to state a claim for relief.

However, in the body of his complaint, Plaintiff suggests that on the days he appeared before Defendant Baker for misconduct hearings, he told Defendant Baker that "[his] due process was violated [and] civil action [would] be taken." (Compl., ECF No. 1, PageID.4.) Defendant Baker told Plaintiff to "sign off" and he would give Plaintiff "[seven] days on each." (*Id.*) Plaintiff

suggests that because he did not sign off on the tickets, Defendant Baker retaliated against Plaintiff by giving him 15 days' loss of privileges for each ticket. (*Id.*)

Similarly, Plaintiff goes on to allege that on the days he appeared before Defendant Boerema for misconduct hearings, Plaintiff told Boerema that his due process rights had been violated and that "civil action [would] be taken." (*Id.*) According to Plaintiff, Defendant Boerema called Plaintiff a nuisance and said that he would not be dismissing the tickets. (*Id.*) Plaintiff suggests that Defendant Boerema falsified the hearing report by stating that the camera footage showed the sergeant sliding the tickets under Plaintiff's cell door even after Plaintiff told Defendant Boerema that the tickets had been hung on the wall next to Plaintiff's cell door. (*Id.*) Plaintiff also suggests that Defendant Boerema retaliated against Plaintiff by finding him guilty and giving him a total of 40 days' loss of privileges. (*Id.*)

Finally, Plaintiff suggests that Defendants Clouse and Burgess retaliated by denying Plaintiff's appeals of these misconduct convictions. (*Id.*, PageID.5.)

With respect to Defendants Baker and Boerema, at this stage of the proceedings, Plaintiff has sufficiently alleged that he engaged in protected conduct by stating that he would take "civil action" because of the alleged violations of his due process rights. Moreover, Plaintiff engaged in protected conduct when he refused to sign off on the tickets as suggested by Defendant Baker. As set forth above, Plaintiff contends that Defendant Baker sanctioned him to 15 days' loss of privileges for each ticket, and that Defendant Boerema sanctioned him to a total of 40 days' loss of privileges. The Sixth Circuit has held that even seven days' loss of privileges—which includes loss of the rights to use the exercise facilities, to attend group meetings, to use the telephone, to have visitors, to access the general library, and to access the activity room—amounts to adverse action. *See Maben v. Thelen*, 887 F.3d 252, 266–67 (6th Cir. 2018) (quoting *Hill*, 630 F.3d at 474)

(holding that "actions that result in more restrictions and fewer privileges for prisoners are considered adverse"). Finally, Plaintiff contends that Defendants Baker and Boerema imposed these sanctions shortly after Plaintiff threatened civil action. Taking Plaintiff's allegations as true and in the light most favorable to him, the Court will not dismiss Plaintiff's retaliation claims against Defendants Baker and Boerema premised upon their issuance of sanctions to Plaintiff on initial review.

However, with respect to Defendants Clouse and Burgess, Plaintiff's retaliation claims against those individuals are entirely conclusory. Instead, Plaintiff merely alleges the ultimate fact of retaliation without providing any supporting facts. Plaintiff provides no facts from which the Court could infer that Defendants Clouse and Burgess denied Plaintiff's appeals of his misconduct convictions solely because he chose to appeal those conviction and because of Plaintiff's statements that he would take civil action based upon the alleged due process violations. Indeed, Plaintiff alleges no facts suggesting that Defendants Clouse and Burgess were aware of any threatened civil action by Plaintiff. Such "conclusory allegations of retaliatory motive 'unsupported by material facts'" do not state a claim under § 1983. *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (citation omitted); *see Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (holding that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive Section 1915A screening]." (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))). Accordingly, Plaintiff's First Amendment retaliation claims against Defendants Clouse and Burgess will be dismissed.

12

In sum, all of Plaintiff's retaliation claims, with the exception of his claims against Defendants Baker and Boerema premised upon their issuance of sanctions right after Plaintiff threatened civil action, will be dismissed.

### B.     Eighth Amendment

Plaintiff also contends that Defendants' actions during his misconduct proceedings violated his Eighth Amendment rights.

With its prohibition against cruel and unusual punishment, the Eighth Amendment protects against the denial of the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). However, the Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987). "[R]outine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). Consequently, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*,

13

509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

Here, Plaintiff's Eighth Amendment claims fail because he does not allege any facts suggesting that Defendants' actions denied him any basic human needs. The Sixth Circuit has held that without a showing that basic human needs were not met, the denial of privileges cannot establish an Eighth Amendment violation. *See Evans v. Vinson*, 427 F. App'x 437, 443 (6th Cir. 2011); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008). Here, as set forth *supra*, Plaintiff was sanctioned to various periods of loss of privileges as a result of his misconduct convictions. With regard to the restrictions that follow the imposition of loss of privileges sanctions, the Court is guided by authorities related to the more onerous sanction of segregation. "Because placement in segregation is a routine discomfort that is a part of the penalty that criminal offenders pay for their offenses against society, it is insufficient to support an Eighth Amendment Claim." *Harden-Bey*, 524 F.3d at 795 (internal quotation marks omitted) (quoting *Murray v. Unknown Evert*, 84 F. App'x. 553, 556 (6th Cir. Dec.8, 2003).

In light of *Harden-Bey*, logic dictates that the lesser sanction of loss of privileges would likewise be insufficient to support an Eighth Amendment claim. In *Alexander v. Vittitow*, the Sixth Circuit considered the lesser sanction of loss of privileges:

> To establish a violation of the Eighth Amendment based on alleged cruel and unusual punishment, the prisoner must demonstrate that he was deprived of "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).
>
> Alexander's allegations fail to meet this standard. He alleges that he was "deprived of telephone use to call family, [a] yard, [an] email machine, call-outs, [and] exercise time" and that he was "locked in a cell for 23 hours a day," but he does not allege that he was denied any basic human needs. *Cf. Evans v. Vinson*, 427 F. App'x 437, 443 (6th Cir. 2011) (explaining that basic human needs for purposes of the Eighth Amendment "include food, clothing, shelter, medical treatment, and reasonable safety"). Temporary loss of privileges and confinement in segregation—without any allegations that basic human needs were not met—cannot establish an Eighth Amendment claim. *See, e.g., Bishawi v. Northeast Ohio Corr. Ctr.*, 628 F. App'x 339, 345–46 (6th Cir. 2014) (holding that "loss of certain privileges while in segregation [is] insufficient to support an Eighth Amendment claim" (citing *Farmer v. Brennan*, 511 U.S. 825, 835 (1994))).

*Alexander v. Vittitow*, No. 17-1075, 2017 WL 7050641, at *5 (6th Cir. Nov. 9, 2017). Plaintiff, similarly, does not allege that he was denied any basic human needs. Therefore, Plaintiff's allegations regarding the loss of privileges sanctions are insufficient to state an Eighth Amendment claim upon which relief may be granted. Accordingly, the Court will dismiss Plaintiff's Eighth Amendment claims.

### C.     Fourteenth Amendment

Plaintiff next contends that Defendants violated his Fourteenth Amendment due process rights during his various misconduct proceedings. Specifically, Plaintiff suggests that he did not receive due process because he was not provided with copies of the misconduct reports due to being on paper restriction at the time.

To prevail on a procedural due process claim, an inmate must first demonstrate that he was deprived of "life, liberty, or property" by government action. *Wilkinson v. Austin*, 545 U.S. 209,

221 (2005). The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). A prisoner's ability to challenge a prison misconduct conviction therefore depends on whether the conviction implicated any liberty interest. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995).

The Sixth Circuit has routinely held that misconduct convictions that do not result in the loss of good time are not atypical and significant deprivations and therefore do not implicate due process. *See, e.g.*, *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004), overruled on other grounds by *Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003); *Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th Cir. Aug. 12, 1999). Under MDOC Policy Directive 03.03.105, ¶ C (eff. Aug. 26, 2024), a Class I misconduct is a "major" misconduct and Class II and III misconducts are "minor" misconducts. The policy further provides that prisoners are deprived of good time or disciplinary credits only when they are found guilty of a Class I misconduct. *Id*. ¶ DDDD. As set forth *supra*, all of the misconducts for which Plaintiff was convicted were Class II misconducts. Therefore, none of the misconducts received by Plaintiff could have resulted in the loss of good time credits. For that reason alone, Plaintiff's due process rights were not implicated.

Moreover, Plaintiff was sanctioned only with various periods of loss of privileges. Pursuant to MDOC Policy Directive 03.03.105, the "loss of privileges" sanction involves the loss of various

16

privileges, such as access to the day room, exercise facilities, group meetings, "[o]ut of cell hobbycraft activities," the kitchen area, the general library (not including the law library), movies, music practice, and other "[l]eisure time activities." MDOC Policy Directive 03.03.105, Attach. E. Where a stay longer than 30 days in segregation is not considered an atypical or significant hardship, *see Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010), it would be illogical to suggest that the lesser penalty of loss of privileges for that duration could be atypical or significant. Sixth Circuit authority bears that out. *See Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004) (holding that a 14-days' loss of privileges sanction did not implicate the due process clause); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003) (nine-month loss of package privileges did not impose an atypical and significant hardship); *Alexander*, 2017 WL 7050641, at *3 (concluding that "thirty days' loss of privileges . . . did not implicate a protected liberty interest"); *Langford v. Koskela*, No. 16-1435, 2017 WL 6803554, at *3 (6th Cir. Jan. 24, 2017) (holding that 30 days' toplock and 30 days' loss of privileges "does not amount to an 'atypical and significant hardship'").

Accordingly, for the foregoing reasons, Plaintiff's Fourteenth Amendment due process claims related to his misconduct proceedings are properly dismissed for failure to state a claim.

## Conclusion

The Court will grant Plaintiff leave to proceed *in forma pauperis*. (ECF No. 2.) Moreover, having conducted the review required by the PLRA, the Court determines that Defendants Burgess, Clouse, Ward, and Lofton will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Baker and Boerema: (1) any intended First Amendment retaliation claims premised upon Plaintiff's initial receipt of misconduct tickets after violating MDOC policy and procedure; (2) Plaintiff's Eighth Amendment claims; and (3) Plaintiff's Fourteenth Amendment claims. Plaintiff's First Amendment retaliation

17

claims premised upon Defendant Baker and Boerema's issuance of sanctions right after Plaintiff threatened civil action remain in the case.

    An order consistent with this opinion will be entered.

Dated:   August 19, 2025                               /s/ *Maarten Vermaat*
                                                              Maarten Vermaat
                                                              United States Magistrate Judge